# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 1, 2013 Session

## STATE OF TENNESSEE v. VIRGIL CALVIN HOWELL

### Appeal from the Circuit Court for Hardeman County
### No.  CC-2012-CR-96    J. Weber McCraw, Judge

---

### No.  W2012-02585-CCA-R3-CD  - Filed February 13, 2014

---

Appellant, the State of Tennessee, appeals after the Hardeman County Circuit Court granted a motion to dismiss the indictments against Appellee, Virgil Calvin Howell.  Appellee was indicted by the Hardeman County Grand Jury for three counts of contracting without a license in violation of Tennessee Code Annotated sections 62-6-103 and 62-6-120.  After a hearing, the trial court dismissed the indictments.  On appeal, the State insists that the trial court improperly determined that Appellee was not a contractor because Appellee was supervising more than $25,000 of improvements to buildings that he owns and are intended for public use.  After a review of the record and applicable authorities, we determine that the trial court improperly dismissed the indictments where the plain language of the statute indicates that the actions performed by Appellee amounted to contracting as defined by the statute.  Accordingly, the judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Reversed and Remanded.

JERRY L. SMITH, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; and Michael Dunavant, District Attorney General, for the appellant, State of Tennessee.

Thomas M. Minor, Somerville, Tennessee, for the appellee, Virgil Calvin Howell.

# OPINION

## *Factual Background*

In May of 2012, the Hardeman County Grand Jury returned a three-count indictment charging Appellant with contracting without a license. Specifically, each count of the indictment stated that on various dates between December 1, 2011, and May 1, 2012, Appellee:

> [D]id knowingly and unlawfully engage in contracting, as defined by T.C.A. § 62-6-102(3), without a license as required by T.C.A. § 62-6-103, by undertaking to construct, supervise, oversee, schedule, direct, or assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor to install material or equipment for a certain [piece of property] . . . , for which the total cost is twenty-five thousand dollars ($25,000) or more, in violation of T.C.A. § 62-6-103 and T.C.A. § 62-6-120, . . . .

Count One of the indictment specified the property owned by Appellee and known as Pecan Grove Apartments, Count Two of the indictment referred to a commercial hotel building owned by Appellee, and Count Three of the indictment referred to a commercial restaurant building, owned by Appellee. All of the properties were located in Bolivar, Tennessee.

Prior to trial, Appellee filed a motion to dismiss the indictment. In the motion, Appellee claimed that the State failed to show that Appellee violated any criminal offense because Appellee was not a contractor.

The parties stipulated to the following facts prior to the hearing:

1. [Appellee] is the owner of the Garden Apartments, located on Pecan Grove Drive in Bolivar, Hardeman County, Tennessee; a hotel building located at 105 West Market Street in Bolivar, Hardeman County, Tennessee; and a restaurant building located at 109 West Market Street in Bolivar, Hardeman County, Tennessee (collectively, the "Projects").

2. On various dates between approximately May 15, 2011, and May 1, 2012, construction work valued at over $25,000 was performed on each of the Projects.

3. All of the construction work on the Projects was performed by various independent contractors under contract with [Appellee], as the owner of the Projects.

4. [Appellee] has performed no construction work on any of the Projects.

5. [Appellee] applied to the City of Bolivar for building permits for each of the Projects. All of [Appellee's] applications for building permits were denied by the City of Bolivar Building Inspector.

6. All of the electrical work on the Projects was performed by HH Electric. HH Electric has its principal place of business in Bolivar, Tennessee, and is licensed as an electrical contractor by the Tennessee Board for Licensing Contractors (the "Board").

7. [Appellee] neither "bid on" nor "contracted for" the construction, direction, alteration, repair, or demolition of the Projects. Instead, the independent contractors referenced in paragraph 3, above, "bid on" and "contracted for" the construction work performed on the Projects.

8. Under the Tennessee Contractors Licensing Act, Tenn. Code Ann., §§62-6-101, et seq. ("CLA"), the terms "construction manager" and "construction consultant" are not defined.

9. Under the CLA, there is no classification known, or referenced to as "general contractor," or "owner contractor."

10. That the nature of the construction on the three Projects is for alteration and/or repair of buildings for use and occupancy by the general public.

11. That [Appellee] is not nor has he ever been a licensed contractor.

The trial court held a hearing on the motion to dismiss the indictments. At the hearing, prior to the introduction of evidence, the parties informed the trial court that the real issue before the court was whether Appellee was engaged in contracting when he directed work on properties that he owns in Bolivar.

Christopher Cravens was presented as a witness at the hearing. Mr. Cravens served as general counsel to the Tennessee Board for Licensing Contractors ("Board") from 1993 to 1997, is a founding member of the Tennessee Association of Construction Counsel, and

currently represents clients before the Board regarding licensing issues. Mr. Cravens described the law related to the licensure of contractors as "constantly changing."

Mr. Cravens testified that he was unaware of any other cases where an owner of commercial property was actually prosecuted for contracting without a license just by hiring multiple contractors to renovate property. Mr. Cravens informed the court that he successfully defended the Rutherford County Board of Education against the Board when the school board hired multiple prime contractors to construct the Siegel High School football stadium in Murfreesboro. The Board dismissed the complaint because there "is no and was no requirement that Rutherford County hire a general contractor so long as the multiple prime contractors were duly licensed to perform their individual contracts."

Mr. Cravens opined that Appellee's actions did not amount to being a commercial contractor because he did not bid on any contracts. Further, Mr. Cravens explained that the statute did not provide for a licensing classification for owner/contractor or general contractor.

After hearing the testimony and argument, the trial court took the matter under advisement. The trial court issued an order granting the motion to dismiss the indictments. In the order, the trial court specified that the issue before the court was whether Appellee was a "contractor" as contemplated by Tennessee Code Annotated section 62-6-102 and was a person "engaged in contracting" without a license as contemplated by Tennessee Code Annotated section 62-6-103. The trial court reviewed the laws applying to contractors and the history of those laws as set forth in *Winter v. Smith*, 914 S.W.2d 527 (Tenn. Ct. App. 1995). The trial court applied the rules of statutory construction and determined that the law "does not contemplate that an owner of a property engages in the business of contracting when he allows others to work on his property." The trial court determined:

> Mr. Howell, the owner, is not a contractor and is not required to have a license. Upon review of this law and its plethora of changes, the overriding theme of these statutes contemplates the relationship between owner and "contractor" by its numerous references of "contracting with the owner." Mr. Howell owned the property where all the work was performed. Instead of hiring a general contractor to construct the improvements, he decided to hire several contractors and to coordinate and supervise their work himself. While many of the responsibilities that Mr. Howell took on during construction would normally be a general contractor's responsibilities, the mere fact that he assumed these responsibilities does not transform the owner into a "contractor." As Mr. Howell's counsel astutely argued, the replacement of an air conditioning unit which costs more than $25,000 by an owner of a building

-4-

should not and does not transform the owner of the building, who simply makes a telephone call to replace the mechanical unit, into a contractor which thus requires a license.

To expand T.C.A. § 62-6-102 to declare that the owner of a building who seeks to supervise its improvement is a "contractor" is beyond its intended scope. Thus, the only logical conclusion to be drawn from the evidence is that Mr. Howell was the owner of the building project, not a contractor.

The State appeals the dismissal of the indictments.

*Analysis*

On appeal, the State insists that the trial court erred by dismissing the indictments. Specifically, the State claims that Appellee is renovating his property for public use and, as a result, is not exempt from the licensing requirement when he engaged in contracting. Appellee, on the other hand, claims that his only obligation during renovations on his properties was to contract with licensed contractors. In other words, Appellee argues that there was no requirement that he had to be separately licensed as a contractor. Moreover, Appellee suggests that the legislature has chosen not to include a property owner within the definition of contractor.

*Contractors Licensing Act*

Sections 62-6-101 to -139 of the Tennessee Code ("the Contractors Licensing Act") cover licensing requirements of general contractors. The general purpose of the Contractors Licensing Act is to protect the safety and property of the public. *Kyle v. Williams*, 98 S.W.3d 661, 666 (Tenn. 2003). Section 62-6-101(3)(A) defines a contractor, in pertinent part, as:

> [A]ny person or entity who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, schedule, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor to install material or equipment for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, housing development, improvement, or any other construction undertaking for which the total cost of the same is twenty-five thousand dollars ($25,000) or more.

T.C.A. § 62-6-102(3)(A).

Section 62-6-103(a) requires any person engaged in contracting to submit evidence of his or her qualification to engage in contracting and to be licensed. *See* T.C.A. § 62-6-103(a). However, "[n]otwithstanding subdivision (a)(1), any person, firm or church that owns property and constructs on the property single residences, farm buildings or other buildings *for individual use*, and not for resale, lease, rent or other similar purpose, is exempt from the requirements of this part." T.C.A. § 62-6-103(2)(A) (emphasis added). Section 62-6-120 states that any person who engages in contracting without a license commits a Class A misdemeanor. *See* T.C.A. § 62-6-120. However, "the penalties imposed by [Tennessee Code Annotated section 62-6-120(a)(1)] shall not apply to a person who engages a contractor without a license for the purpose of constructing a residence for the use of that person."

*Statutory Construction*

In the case herein, in order to determine whether the trial court improperly dismissed the indictments, we must first determine if Appellee was required to be a licensed contractor by the Contractors Licensing Act. In other words, was Appellee required to have a license to oversee or supervise work that was being done on three pieces of commercial property that he owned in Bolivar, Tennessee?

Resolution of the issue in the case herein requires this Court to utilize the rules of statutory construction. The basic rule of statutory construction is to ascertain and give effect to the intent or purpose of the legislature as expressed in the statute. *Metropolitan Gov't of Nashville & Davidson Co. v. Motel Sys., Inc.*, 525 S.W.2d 840, 841 (Tenn. 1975); *State v. Southland News Co., Inc.*, 587 S.W.2d 103, 106 (Tenn. Crim. App. 1979). We must consider the "natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of that language." *Worrall v. Kroger Co.*, 545 S.W.2d 736 (Tenn. 1977). We should "assume that the legislature used each word in the statute purposely and that the use of [each] word conveyed some intent." *State v. Levandowski*, 955 S.W.2d 603, 604 (Tenn. 1997). Legislative intent must be derived from the plain and ordinary meaning of the statutory language if the statute is devoid of ambiguity. *Mooney v. Sneed*, 30 S.W.3d 304, 306 (Tenn. 2000). When the language is ambiguous, the entire statutory scheme must be examined to determine legislative intent and purpose. *Freeman v. Marco Transp. Co.*, 27 S.W.3d 909, 911 (Tenn. 2000). Moreover, an ambiguity in a criminal statute is construed in favor of the defendant. *Levandowski*, 955 S.W.2d at 604. Issues of statutory construction are questions of law reviewed de novo without a presumption of correctness. *State v. Walls*, 62 S.W .3d 119, 121 (Tenn. 2001).

Looking to the plain language of the statute, it appears that a person is a contractor if they are engaged in any of the activities listed in Tennessee Code Annotated section 62-6-102. It is undisputed that Appellee contracted with various individuals to perform work on property that he owned in Bolivar. In other words, Appellee was "supervis[ing], superintend[ing], oversee[ing], schedul[ing], direct[ing], or in any manner assum[ing] charge of the . . . alteration, repair, improvement, . . . for any building, . . . , housing, housing development, improvement, or any other construction undertaking for which the total cost . . . is twenty-five thousand dollars ($25,000) or more." T.C.A. § 62-6-102(3)(A). Further, the undisputed facts indicate that the property was for public rather than private use. Again, "any person, firm or church that owns property and constructs on the property single residences, farm buildings or other buildings *for individual use*, and not for resale, lease, rent or other similar purpose, is exempt from the requirements of this part." T.C.A. § 62-6-103(2)(A) (emphasis added). According to the unambiguous language of the statute, Appellee was required to "submit evidence of qualification to engage in contracting and shall be licensed." T.C.A. § 62-6-103(a)(1), (2)(A). Consequently, the trial court erred in determining that Appellee was not a contractor.

We note that Appellee relies heavily on the case of *Winter v. Smith*, 914 S.W.2d 527 (Tenn. Ct. App. 1995), to support his argument. The trial court also utilized *Winter* in its analysis. In *Winter*, the Tennessee Court of Appeals undertook a thorough examination of the evolution of the Tennessee contractors' licensing statutes. The case involved, among other things, a suit filed by a project owner, Ms. Winter, who sued a contractor, Mr. Smith, hired for construction of an equestrian center. *Id*. at 530-31. Ms. Winter alleged that Mr. Smith overcharged her for material and equipment used on the job and that she was entitled to damages. *Id.* Mr. Smith asserted that he was not required to obtain a contractor's license for work he performed on the property owned by Ms. Winter because he was a subcontractor performing work for which a license was not required. *Id.* at 534. Ms. Winter relied on an affirmative defense in which she argued that Mr. Smith could recover no more than his documented expenses because he was an unlicensed contractor when he did the work. *Id.*

In *Winter*, the Court of Appeals analyzed the affirmative defense and determined the important question was whether Mr. Smith was a contractor or a subcontractor on the project. *Id.* at 537. The court held that the fact that a property owner assumed duties during a construction project, which would normally be responsibilities of a general contractor, did not transform the owner into a "contractor" so as to transform the actual contractor into a subcontractor. *Id.* at 540. In other words, the nature of the work Mr. Smith performed amounted to "contracting" within the definition of Tennessee Code Annotated section 62-2-102(1)(A) for which a license was required. *Id.* at 540.

In *Winter*, however, the court did not consider the statutory definition of "contractor" contained in Tennessee Code Annotated section 62-6-101(3)(A) as it operates *in para materia* with the statutory exemption from the licensing requirement for persons engaging in construction "for individual use." *See*, T.C.A. § 62-6-103(2)(A). When these statutes are considered together it is apparent that the legislature intended for licensed contractors to perform contracting activities unless the person performing such activities is doing so for his or her own use. In the instant case, Appellant clearly intended to rent the apartment units he was remodeling to the general pubic. Thus, he falls within the definition of a "contractor" and outside the exemptions of the licensing requirement. For these reasons, we find *Winter* unpersuasive.

As we determined above, the plain language of the Contractor Licensing Act provides that the activities undertaken by Appellant must be done by a licensed contractor. As a result, the trial court improperly dismissed the indictments. Consequently, we reverse and remand the judgment of the trial court for further proceedings consistent with this opinion.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is reversed and the matter is remanded for further proceedings.

_____
JERRY L. SMITH, JUDGE